# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN HUGEL,** | : | CIVIL ACTION NO. 1:08-CV-1050 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **WARDEN B. A. BLEDSOE,** | : | |
| Respondent | : | |

## **MEMORANDUM**

Presently ripe for disposition is the instant petition for writ of habeas corpus filed by federal inmate Bryan Hugel ("Hugel") pursuant to 28 U.S.C. § 2241. (Doc. 1.) He is proceeding pro se. For the reasons set forth below, the petition will be dismissed.

## I. Background

Hugel was convicted in the United States District Court for the District of Maryland of Conspiracy to Distribute and Possession with Intent to Distribute Cocaine. (Doc. 6-2, Declaration of Drug Abuse Treatment Coordinator, Dr. Richard Williams, Psy. D., ("Williams Decl.") at 3-4, ¶ 4.) He is presently serving a thirty-month prison term. (Id.) His projected release date, *via* good conduct, is September 28, 2009. (Id.) Upon release, he will commence service of a three year term of supervision.

On September 10, 2007, while confined at that Satellite Prison Camp at the United States Penitentiary at Lewisburg, Lewisburg, Pennsylvania, Hugel signed an agreement expressing his interest in participating in a Federal Bureau of Prisons Residential Drug Abuse Treatment Program ("RDAP"). There are three phases to this program. The first phase is the residential unit-based component which lasts a minimum of 500 hours, over a six to twelve-month period. (Doc. 6-2, Williams Decl. at 4, ¶ 6.) The second phase provides for institutional transitional services to assist an inmate to reintegrate into the general prison population, time permitting. (Id.) The final phase is the community-based transitional services program. (Id. at ¶ 7.) "Successful completion of the RDAP entails successful completion of the unit-based portion of the drug treatment program and applicable transitional services components." (Id.)

The agreement to participate states that "[a]ll program participants agree to refrain from any behavior disruptive to the program or to the participants and staff of the program." (Doc. 6-2, at 8, 9.) Hugel was accepted into the program on September 26, 2007, and assigned to Group 13. If he successfully completed the program, he would be transferred to a Residential Re-entry Center (RRC) on July 2, 2008. (Doc. 6-2, Williams Decl., at 5, ¶ 11.) However, Hugel did not complete the program. Rather, according to the Drug Abuse Treatment Coordinator, the following incident resulted in his removal from the program:

12. On Sunday, December 23, 2007, staff at the USP Lewisburg satellite camp received information that inmate Hugel had placed a phone call to his wife and discussed the introduction through the visiting room of something they referred to as "caps". Inmate Hugel instructed his wife to put "caps" into two soda bottles which he would consume "just like before." Staff are aware that inmate[s] frequently use this type of coded language when attempting to arrange the introduction of contraband into the institution. The petitioner's wife and three other individuals visited with Hugel that same day from 10:50 am to 2:45 pm.

13. When inmate Hugel was released from the visiting room, a visual search was conducted with negative results. However, staff noted that Hugel's entire body had a "reddish tint" as if he were warm

14. Staff prepared the necessary paperwork for a Urine Analysis test to be administered to the inmate. At approximately 6:20 pm, staff escorted inmate Hugel to the Officer's station for the urinanalysis test. The initial test results were positive for what appeared to be methamphetamines. The evening watch Operations Lieutenant was notified and the decision was made to secure inmate Hugel in the holdover unit pending the official results of the test. [Citation omitted.]

(Doc. 6-2, Williams Decl., at 5-6.) The official test results were "inconclusive." (Id. at 6, ¶ 15.) "Although inmate Hugel did not receive a formal disciplinary incident report based on the inconclusive lab report, based on the information staff had regarding his apparent attempts to introduce contraband to the facility, RDAP staff (in consultation with the RDAP Coordinator) made the decision to remove inmate Hugel from the program as his actions were clearly not representative of a participant's sincere attempts to change their criminal thinking and substance

abuse patterns. On January 15, 2008, inmate Hugel was expelled from the RDAP program." (Id. at ¶ 17.)

On May 8, 2008, BOP regional staff requested that the decision to remove Hugel from the program be reconsidered. (Id. at ¶ 18.) The following day, RDAP staff met with Hugel and recommended that he be placed in "'group 16' which was consistent with the point in the program at which Hugel was removed." (Id. at ¶ 20.) Hugel indicated that he would like to discuss the proposal with his family. He informed staff on May 22, 2008, that he would not be returning to the program. (Id.) "RDAP staff counseled the inmate to continue to take advantage of non-residential drug counseling services offered by the prison and advised him that if he had a 'high level of participation in non-residential services' staff would recommend to his Unit Team that he be submitted for a 180 day placement in a Residential Re-Entry Center." (Doc. 6-2, at 6-7, ¶ 20, referencing the administrative note found at Doc. 6-2, at 14.)

Hugel filed the instant petition on May 30, 2008, essentially arguing that the BOP's decision to expel him from the RDAP program failed to meet minium procedural due process requirements and was arbitrary, capricious, and an abuse of discretion. (Doc. 1 at 16, ¶¶ 6.0-6.2.)

In response, respondent argues that Hugel's petition should be dismissed for failure to exhaust administrative remedies. An inmate may challenge any aspect of his or her confinement using the Bureau of Prison's ("BOP") administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*. To exhaust

4

administrative remedies, an inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. Id. at §542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. 28 C.F.R. §§542.15(a), 542.18. No administrative appeal is considered finally exhausted until a decision is rendered by the BOP's Central Office.

The BOP maintains official records concerning the processing of inmate administrative remedies, many of which are located in the BOP's computerized records (SENTRY) and inmate files. (Doc. 6-2, Declaration of L. Cunningham, BOP Supervisory Attorney at the United States Penitentiary at Lewisburg ("Cunningham Declaration"), at 16, ¶¶ 1-2.) On March 5, 2008, Hugel filed an administrative remedy concerning his expulsion from the RDAP program. (Id. at 17, ¶ 5.) Although his request for relief was denied at the institution level, on May 8, 2008, the Regional Office partially granted him relief to the extent that it instructed the institution staff to reconsider re-admitting the inmate to the RDAP program. (Id. at ¶ 6.) The instant petition was filed on May 30, 2008. On June 11, 2008, he appealed to the Central Office. At the time respondent's response was filed, no decision on the appeal had been made. (Id. at ¶ 8.)

Hugel states that at the time he filed his petition, he had exhausted the administrative remedy process through the regional appeal level and was in the process of pursuing his appeal to the Central Office. (Doc. 1, at 12, ¶ 4.5.) In defense of his decision to file his petition prior to exhausting his administrative remedies, he states "I will suffer irreparable harm and my prayer for relief will become moot if I am forced to exhaust my single remaining administrative remedy. . . ." (Id. at ¶ 4.7.)

## II. Discussion

### A. Exhaustion of Administrative Remedies

28 U.S.C. § 2241 provides district courts with authority to order the release of prisoners from unconstitutional conditions of confinement. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 758-60 (3d Cir. 1996). Generally, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. See id. at 760; see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("[W]e have consistently applied an exhaustion requirement to claims brought under § 2241.") (citing Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981)). Exhaustion is required for three reasons: (1) it facilitates judicial review by allowing the appropriate agency to develop a factual record and to apply its expertise; (2) it conserves judicial resources; and (3) it fosters administrative autonomy by providing agencies the opportunity to correct their errors. Garcia v. Gonzalez, Civ. No. 3:07-CV-0047, 2007 WL 438747, at *1 (M.D. Pa. Feb. 6, 2007) (citing Moscato, 98 F.3d at 761-62). Exhaustion of administrative

remedies, however, is not required where exhaustion would not promote these goals.  For instance, exhaustion is not required where a prisoner demonstrates futility, Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998), where delay would subject the prisoner to irreparable injury, Carling v. Peters, Civ. No. 00-CV-2958, 2000 WL 1022959 at *2 (E.D. Pa. July 10, 2000), or where the issue presented by the prisoner involves only statutory construction, Bradshaw v. Carlson, 682 F.2d 1050, 1052-53 (3d Cir. 1981).

Hugel concedes that he did not exhaust his administrative remedies.  As noted above, a prisoner is required to exhaust his administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241.  Moscato, 98 F.3d 757.  Hugel has failed to do so.

In an effort to excuse the requirement, he argues that his claim would have become moot if he pursued exhaustion.  (Doc. 1, at 12, ¶ 4.7.)  Respondent counters by citing to BOP Program Statement 5330.10, Drug Abuse Programs Manual, Inmate, Chapter 8, Section 8.2, which states that "when the inmate alleges the administrative remedies process will affect the inmate's release date if the expulsion from treatment or the loss of eligibility is overturned (within two years from release at the time of filing the administrative remedy), staff will determine the claim is of an emergency nature and process in accordance with 28 C.F.R. § 542.14."  See BOP Program Statement 5330.10, Drug Abuse Programs Manual, Inmate, Chapter 8, Section 8.2.  Once such a determination is made, no extensions of the administrative remedy process will be granted at any time.  Id.

7

Exhaustion will not be excused in this matter. Hugel argues that full compliance with the administrative remedy procedure was futile because if required to complete the process, his date of transfer to the RRC would pass and his petition would be moot. This argument is disingenuous. Despite the fact that he was expelled from the RDAP program on January 15, 2008, he waited approximately forty-two days, until February 26, 2008, to file his BP-9. (Doc. 8, at 7; Doc. 6-2, at 24.) This was logged into the SENTRY system on March 5, 2008. (Doc. 8, at 7.) A response was provided on March 17, 2008. (Doc. 6-2, at 26-7.) Ten days later, on March 28, 2008, he pursued his appeal. (Id. at 22.) The appeal appeared in the SENTRY system on April 11, 2008. (Doc. 8, at 7.) The appeal was partially granted on May 8, 2008, to the extent that the RDAP Coordinator was directed to reconsider Hugel's expulsion. (Doc. 6-2, at 23.) The following day, RDAP staff met with Hugel and recommended that he not return to his original group but, rather, be placed in a group that was consistent with the point in the program at which he was removed. On May 22, 2008, he declined the offer to return to the program. The following week, he filed his appeal with the Central Office on May 29, 2008, and it was logged into the SENTRY system on June 11, 2008. A response from the Central Office was expected by July 21, 2008.

As is evident from the above, the administrative remedy procedure was completely adequate in this instance and any time issues were precipitated by Hugel's delay in initiating the process.

Even if the court were to determine that exhaustion should be excused, as discussed below, the petition would be subject to dismissal.

**B.      Merits of the Petition**

A district court may only extend the writ of habeas corpus to an inmate if he demonstrates that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Hugel has not met this burden. There was no ambiguity that his early release eligibility was provisional and conditioned upon several factors, including his successful completion of RDAP. He had no liberty interest in a sentence reduction under § 3621(e). See Richardson v. Joslin, 501 F.3d 415 (5th Cir. 2007) (concluding that there is no liberty interest in a sentence reduction under § 3621(e); the denial of a sentence reduction would only cause an inmate to serve the remainder of his sentence under typical circumstances rather than imposing a punishment qualitatively different from the punishment characteristically suffered by a person convicted of a crime; and, the statute is discretionary) (citations omitted); see also Rublee v. Fleming, 160 F.3d 213, 217-18 (5th Cir. 1998).

Moreover, the BOP is charged with administering § 3621(e), see generally Lopez v. Davis, 531 U.S. 230, 235 (2001), and it is required that inmates complete RDAP in order to be eligible for early release under § 3621(e). See 28 C.F.R. § 550.58(a) (3)(i); id. § 550.56. ( See also Doc. 6-2, Williams Decl., at 4, ¶ 6); BOP Program Statement 5330.10, Drug Abuse Programs Manual, Chapt. 6, Pages 1-3, 12-14). That requirement is a valid exercise of the BOP's discretion under § 3621(e)

and this court must defer to it. See, e.g., McLean v. Crabtree, 173 F.3d 1176, 1180-84 n. 5 (9th Cir. 1999) (collecting cases) (regulation requiring participation in and completion of the community-based aspect of RDAP is entitled to deference under Chevron, U.S.A. v. Natural Res. Def. Council, 467 U.S. 837 (1984)). Finally, when the BOP decided to reconsider its decision to expel Hugel, and afford him the opportunity to reenter the program, it was within the BOP's discretion to require him to reenter the program at the point that he exited the program. Hugel has failed to meet his burden in establishing a violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Rather he merely disagrees with a BOP decision that is within its discretion to make. Id.; see Marshall v. Lansing, 839 F.2d 933, 949-50 (3d Cir. 1988). His petition is therefore subject to dismissal.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 will be dismissed.

An appropriate order follows.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      May 18, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN HUGEL,** | : | CIVIL ACTION NO. 1:08-CV-1050 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **WARDEN B. A. BLEDSOE,** | : | |
| Respondent | : | |

## **ORDER**

AND NOW, this 18th day of May, 2009, in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

                                           S/ Christopher C. Conner
                                           CHRISTOPHER C. CONNER
                                           United States District Judge